MARGUERITE EZELL and SHERILYN )
SILVER, on behalf of themselves and all )
others similarly situated, )
                             )
        Plaintiffs, )
                             )
     v. )         No. 4:16CV870 RLW
                             )
ACOSTA, INC., )
                             )
        Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Notice and Conditional

Certification. (ECF No. 75) The motion is fully briefed and ready for disposition. On April 4,

2018, the Court held a hearing on the motion. Upon review of the motion, related documents,

and the evidence adduced at the hearing, the Court will deny Plaintiffs' motion for conditional

certification.

## I. Background

Plaintiffs Marguerite Ezell ("Ezell") and Sherilyn Silver ("Silver") and opt-in Plaintiffs

(collectively "Plaintiffs") filed a Second Amended Class Action Complaint on September 1,

2016, alleging claims for violations of the Fair Labor Standards Act ("FLSA"), U.S.C. §§ 201 *et*

*seq.*, and violations of Missouri Common Law and Public Policy against Defendant Acosta, Inc.

("Acosta"). (Second Am. Class Action Compl. ["SAC"] ¶¶ 2, ECF No. 19) Plaintiffs purport to

bring this putative collection action on behalf of other former and current Merchandisers[1]

employed by Defendant Acosta across the United States. (SAC ¶ 2) Plaintiffs allege that Acosta

---

[1] Plaintiffs define "Merchandisers" as "Retail Coverage Merchandisers," "Retail Service
Merchandisers," and equivalent positions. (SAC ¶ 8)

has engaged in an unlawful pattern and practice of failing to pay Merchandisers minimum wage and overtime pay as required by the FLSA. (SAC ¶ 2) According to Defendant, "Acosta is a full-service sales and marketing agency that provides outsourced sales, merchandising, marketing and promotional services to consumer packaged goods companies and retailers across the United States." (Def.'s Mem. in Opp. p. 2, ECF No. 91) Acosta employees work in retail establishments such as Wal-Mart, Kroger, and Target.

Both Ezell and Silver were employed in Missouri as Wal-Mart Continuity Associates ("WMCAs"). The Named Plaintiffs are joined by opt-in Plaintiffs Judy Gambucci and Kay Mader, both employed as Grocery Retail Coverage Merchandisers ("Grocery RCMs"). Specifically, Named Plaintiffs allege that Acosta willfully failed to pay them and others similarly situated overtime wages for all "off-the-clock" work performed in excess of 40 hours in a workweek. Plaintiffs move for an order granting notice and conditional certification of this FLSA collective action on behalf of all current and former Wal-Mart Retail Continuity Associates and Grocery Retail Coverage Merchandisers who are or were currently employed by Acosta.

## II. Discussion

On January 15, 2018, Plaintiffs filed the instant Motion for Notice and Class Certification and accompanying Memorandum in Support. (ECF Nos. 75, 76) In their Second Amended Complaint, Plaintiffs define the proposed collection of similarly situated employees as "[a]ll individuals who are currently employed or formerly have been employed by Acosta as Merchandisers, or equivalent positions, in the United State within the last three years." (SAC ¶ 19) Plaintiffs seek to combine Wal-Mart Retail Continuity Associates and Grocery Retail Coverage Merchandisers as a collective class of Retail Coverage Merchandisers ("RCMs").

(ECF No. 76 p. 1) Defendant contends that this proposed collective includes about 7,000 individuals.

In support of their motion, Plaintiffs rely on a California case decided seven years ago certifying a collective against Acosta. *See Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105 (C.D. Cal. 2011). Plaintiffs allege that, subsequent to the *Mitchell* case, Defendant Acosta continued "its *de facto* corporate-wide policy of allowing RCMs to work overtime hours without being compensated for all the hours they work." (ECF No. 76 p. 1) Plaintiffs ask the Court to follow the reasoning in *Mitchell* and certify the collective class.

Defendant responds that the Wal-Mart Retail Continuity Associates and Grocery Retail Coverage Merchandisers are not similarly situated such that Plaintiffs' motion should be denied.[2] Defendant Acosta further argues that the Named Plaintiffs are unable to demonstrate that the putative class members are similarly situated with respect to similar policies or circumstances. Acosta contends that the testimony relied upon by the Plaintiffs shows that the claims stem from a variety of circumstances based on employees' own choices and beliefs about time recording, work completion, and instructions from supervisors, thus showing a lack of common policy or practice at Acosta. Defendant argues that working "off-the-clock" resulted from personal decisions requiring an individualized analysis. Finally, Defendant contends that the Named Plaintiffs are not similarly situated to any Grocery RCMs due to material differences in job

---

[2] Defendant maintains that Acosta's channels, and specifically the Wal-Mart channel and the Grocery channel, are run as autonomous business units, operate independently, and have unique features. The WMCAs follow Wal-Mart specific policies and procedures; receive day-to-day direction from Wal-Mart managers; report to their own dedicated management team within the Wal-Mart channel; perform unique, Wal-Mart specific daily tasks; use different customer technology; and receive more customer data. Grocery RCMs, on the other hand, perform different work duties based on the specific retail store and the products; use different in-store data depending on the store and product; and undergo different training based on each store's unique store requirements.

duties. Defendant asks the Court to apply an intermediate standard because discovery has occurred in this case.

Plaintiffs respond that the intermediate standard does not apply in this case and that this case is identical to *Mitchell*, which applied a more lenient standard to conditionally certify a collective action against Acosta. Plaintiffs argue that Defendant Acosta improperly argues the merits at the conditional certification stage. Instead, Plaintiffs assert that the WMCAs and Grocery RCMs work as merchandisers, work servicing stores, and are subject to the same time-keeping systems. Plaintiffs contend that the WMCAs and Grocery RCMs are sufficiently similarly situated to allow notice and conditional certification at this stage of the litigation.

Section 7 of the FLSA mandates that an employer may not subject non-exempt employees to work a week in excess of forty hours unless the employee is compensated for his or her overtime with additional pay of at least one and one-half times his or her regular hourly wage. 29 U.S.C. § 207(a)(1). A collective action under the FLSA to recover overtime compensation and liquidated damages may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an opt-in basis, which requires employees to provide their consent in writing to join the action. 29 U.S.C. § 216(b); *Schmaltz v. O'Reilly Auto. Stores, Inc.*, No. 4:12-CV-1056-JAR, 2013 WL 943752, at *2 (E.D. Mo. March 11, 2013).

District courts within the Eighth Circuit conduct a two-step analysis to determine whether employees are "similarly situated" for purposes of a collective action. *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010). "The first step is the 'notice stage,' in which plaintiffs seek early conditional class certification and notify potential

class members of the case." *Bilskey v. Bluff City Ice, Inc.*, No. 1:13-CV-62 SNLJ, 2014 WL 320568, at *1 (E.D. Mo. Jan. 29, 2014) (quoting *Littlefield*, 679 F. Supp. 2d at 1016). The plaintiffs' burden at this stage is not an onerous one; instead, "'[c]onditional certification at the notice stage requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Littlefield*, 679 F. Supp. 2d at 1016 (quoting *Schleipfer v. Mitek Corp.*, No. 1:06CV109 CDP, 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007)). "Plaintiffs may satisfy this burden through affidavits, supported by admissible evidence." *Bilskey*, 2014 WL 320568, at *2 (citation omitted). However, plaintiffs may not meet their burden through unsupported allegations of additional plaintiffs or widespread violations of the FLSA. *Id.* The Court does not reach the merits of the plaintiff's claims or determine whether class members are actually similarly situated at this stage of the litigation. *Id.* If the Court conditionally certifies the class, the potential class members are given notice and an opportunity to opt-in. *Wilson v. PNK (River City), LLC*, No. 4:15CV00380 AGF, 2015 WL 5098716, at *2 (E.D. Mo. Aug. 31, 2015).

The second step is the "merits stage" and occurs when the defendant moves to decertify the class, typically after the close of discovery. *Bilskey*, 2014 WL 230568, at *2. "Applying a stricter standard, the court at the second step makes a factual determination on the similarly situated question." *Wilson*, 2015 WL 5098716, at *2.

Courts employ a heightened "intermediate" standard at the conditional certification stage where substantial discovery has already taken place. *Kayser v. Sw. Bell Tel. Co.*, 912 F. Supp. 2d 803, 812 (E.D. Mo. 2012). "Some courts use the more stringent second-step decertification factors, others require 'modest factual support,' while others fail to articulate an alternative at all." *Id.* In *Kayser*, the court found:

> [I]n order to provide some measurable standard by which to judge if Plaintiffs
> have made a sufficient modest "plus" factual showing ... this Court will compare
> Plaintiffs' allegations set forth in their Complaint with the factual record
> assembled through discovery to determine whether Plaintiffs have made sufficient
> showing beyond their original allegations that would tend to make it more likely
> that a class of similarly situated employees exists.

*Id.* (quoting *McClean v. Health Sys., Inc.,* No. 11–03037–CV–S–DGK, 2011 WL 6153091, at *5

(W.D. Mo. Dec. 12, 2011)).

Applying this standard, the Court finds that substantial discovery has been conducted

thus warranting intermediate scrutiny. Here, although discovery was limited to the issue of

certification, the Court notes that the parties exchanged interrogatories, conducted depositions,

exchanged a large number of documents, and filed contentious motions to compel and for a

protective order. Depositions included those of the Named Plaintiffs, Opt-in Plaintiffs, and

corporate representatives to establish whether the Named Plaintiffs working as WMCAs and the

opt-in Plaintiffs working as Grocery RCMs had similar jobs, similar duties, similar time-keeping

methods, and similar requirements. Thus the Court will apply a heightened standard instead of

the lenient standard proposed by Plaintiffs.

"To be considered 'similarly situated,' plaintiffs must show that they 'were together the

victims of a single decision, policy or plan.'" *Kayser*, 912 F. Supp. 2d at 812 (quoting *Davis v.

NovaStar Mortg., Inc.,* 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)). The Court finds that

Plaintiffs have made no such showing.

Here, Plaintiffs have not demonstrated that a single policy applied to the WMCAs,

Grocery RCMs, or both. Plaintiffs claim that Defendant has a "*de facto* common, illegal 'off-

the-clock' RCM overtime practice." (ECF No. 76 p. 5) Plaintiffs allege that they were regularly

required to work overtime without pay to meet their job requirements and complete their work

assignments. They claim that Acosta "instructed, intimidated, and discouraged [Plaintiffs] from

recording the actual hours they worked." (*Id.*) Plaintiffs assert that their supervisors knew they were working overtime and not being paid for those hours.

Defendant concedes that it utilizes a uniform time and attendance system for all Acosta employees.[3] (ECF No. 90 p. 3) Further, the written policies provide that employees must record and report all working time; supervisors are prohibited from directing employees to work off-the-clock; supervisors are to ensure associates do not feel pressured to underreport work; supervisors are prohibited from compensating associates for overtime by giving time off in the future; employees must be paid for all work regardless of location; and employees must obtain approval before working overtime. (Gist Decl. Def.'s Ex. C, ECF No. 90-4)

Here, a review of the evidence shows the performance of "off the clock" duties were the result of Plaintiffs' personal decisions, not a policy or general practice at Acosta. Indeed, each Plaintiff had a different experience with respect to reporting time. Opt-in Plaintiff Piercy testified that she sought to recover time spent in the store and commuting that she did not record.[4] (Piercy Dep. 87:7-88:1, ECF No. 90-9) Named Plaintiffs Ezell and Silver, as well as Opt-in Plaintiff Mader are not seeking recovery for time spent in stores but for time spent performing administrative tasks at home and for commute time. (Ezell Dep. 167:21-168:19,

---

[3] Use of computer timekeeping programs "is not probative evidence of a national decision, policy or plan" to refuse to permit overtime. *Richardson v. Wells Fargo Bank, N.A.,* No. 4:11-CV-00738, 2012 WL 334038, at *5-6 (S.D. Tex. Feb. 2, 2012).

[4] This case was original assigned to U.S. District Judge Carol E. Jackson, now retired. On September 22, 2016, Judge Jackson issued an Order instructing the parties to "submit complete transcripts of all deposition testimony that is cited in support of or in opposition to a motion." (ECF No. 27) The Order further states, "[e]xcerpted portions of a witness's deposition testimony will not be considered by the Court absent a showing of good cause for not submitting the entire transcript." (*Id.*) Plaintiffs have provided only excerpts from their depositions and have not even attempted to show good cause. The Court will therefore refer to the relevant deposition testimony from the complete deposition transcripts submitted by the Defendant.

ECF No. 90-7; Silver Dep. 145:10-146:2, ECF No. 90-8; Mader Dep. 83:18-84:1, ECF No. 90-10)

Further, the evidence shows differences in the time instructions given to the WMCAs and the RCMs. The WMCAs were told to work 7.5 hours a day in the store, with 30 minutes of administrative time. (Ezell Dep. 101:8-12; Silver Dep. 33:6-11) Opt-in Plaintiffs, on the other hand, were instructed to work 8 hours per day in the stores and were unaware of and did not record administrative time spent working at home. (Piercy Dep. 31:19-25, 32:23-33:15, 96:14-97:3, Mader Dep. 66:3-67:5, 67:21-25,75:18-76:18, 104:15-105:4)

Named Plaintiffs state they told their supervisors that they worked off the clock but admitted they were paid for time they actually worked and reminded not to work overtime without prior permission.[5] (Ezell Dep. 97:21-98:11, 99:24-100:8; 122:18-125:6, 127:19-24; Silver Dep. 133:6-134:8) Opt-in Plaintiff Mader did not tell her supervisors about off the clock work. (Mader Dep. 64:8-65:4) Opt-in Plaintiff Gambucci stated that she was afraid she would lose her job if she asked to be paid for all the hours she worked, and while she claims her supervisor knew she was working overtime, nothing in her declaration indicates Gambucci told her supervisor. (Gambucci Decl., ECF No. 76-13) Opt-in Plaintiff Piercy stated that she told her supervisor and did not get much of a response, and she voluntarily changed the number of hours she worked to 40 because she was afraid she would get in trouble. (Piercy Dep. 25:13-26:1, 27:16-28:13) Named Plaintiff Silver was told to prioritize tasks and only work 8 hours per day if the scheduled work would reasonably take more than 40 hours. (Silver Dep. 129:20-130:9; Def.'s Ex. 30, ECF No. 90-8)

---

[5] "[A] policy requiring all overtime to be preapproved does not in and of itself violate the FLSA." *Jungkunz v. Schaeffer's Inv. Research, Inc.*, No. 1:11-CV-00691, 2014 WL 1302553, at *10 (S.D. Ohio Mar. 31, 2014).

The evidence shows that Named Plaintiffs and Opt-in Plaintiffs followed different instructions with respect to allocation of their time, and while perhaps some supervisors knew that Plaintiffs worked over 40 hours, none of the Plaintiffs testified that the supervisors instructed them to work over 40 hours. To the contrary, Plaintiffs were told repeatedly not to exceed 40 hours in a work week. In short, nothing in the evidence shows a company-wide policy of expecting employees to work overtime yet refusing to pay them. Further, the testimony of the Plaintiffs shows that their off the clock claims stem from a variety of circumstances based on their own choices and beliefs, as well as instructions from different supervisors and their subjective interpretation of those instructions. *See Jungkunz*, 2014 WL 1302553, at *11 (finding plaintiff's assumption that he would not be paid an appropriate wage for all his hours and decision to omit the hours he worked from his timesheet failed to demonstrate a general policy or practice of not paying all employees for the hours they worked or that the employer knew or should have known those employees were not reporting overtime); *Richardson*, 2012 WL 334038, at *4 (denying conditional certification under the FLSA where plaintiffs' "declarations and depositions establish[ed] that most Plaintiffs *believed* that they had to work off-the-clock in certain respects," and resolution for a large, nation-wide class would require individual inquiries into each specific manager's policies and practices); *Evans v. Contract Callers, Inc.*, No. 4:10CV2358 FRB, 2011 WL 10099121, at *4 (E.D. Mo. Nov. 16, 2011), *on reconsideration in part*, No. 4:10CV2358 FRB, 2012 WL 234653 (E.D. Mo. Jan. 25, 2012) (denying conditional certification where evidence showed that off the clock duties resulted from plaintiff's personal decisions).

Plaintiffs ask the Court to rely on *Mitchell v. Acosta Sales, LLC*, which conditionally certified an off-the-clock case against Acosta, claiming that the policies did not change after

9

*Mitchell* settled.[6] To the contrary, the evidence demonstrates that Acosta implemented new overtime policies and implemented management and associate training with regard to these policies. (Gist Decl.) In addition, Plaintiffs argue that the Court should follow the reasoning and determination in *Mayberry v. SSM Health Businesses*, No. 4:15-CV-1680-CEJ, 2017 WL 2334981 (E.D. Mo. May 30, 2017). In *Mayberry,* the named and opt-in plaintiffs were hourly-paid home healthcare workers employed at Defendant's St. Louis and St. Louis West locations, and they performed similar duties, had a similar hourly compensation structure, used the same timekeeping program, and were non-exempt for purposes of overtime pay. *Id.* at *3. Plaintiffs further alleged they performed off-the-clock work for defendant both before and after work, without receiving overtime compensation. *Id.* The *Mayberry* court found that supervisors were aware of the off-the-clock work and permitted plaintiff and other similarly situated employees to work outside of their scheduled shifts without receiving appropriate overtime compensation. *Id.*

The Court finds that *Mayberry* is inapposite to the facts of this case. First, Plaintiffs seek a conditional certification of a nationwide class of 7000 employees, not employees in a small geographic location. *See Thompson v. Speedway SuperAmerica LLC,* No. 08-CV-1107 (PJS/RLE), 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009) (denying plaintiffs motion for conditional certification of 8000 putative class members "because those complaints come from such a tiny fraction of the putative class [and] are very weak evidence of the existence of a nationwide corporate policy"). Second, Plaintiffs have not shown that their off-the-clock work was permitted by any supervisor, let alone Defendant Acosta on a company-wide basis. *Id.* at *3 (finding evidence of one of defendant's 1600 stores did "not provide a colorable basis for the

---

[6] In *Mitchell*, the plaintiffs claimed that they were not paid for pre-store and post-store duties, checking emails, voicemails, and last-minute information, and travel time. 841 F. Supp. 2d 1105.

existence of a central corporate policy" of ignoring its published policy and refusing to pay employees for all the hours they worked). Finally, the Court notes that the *Mayberry* court applied a lenient standard, as the parties had only conducted limited discovery. *Id.* at *2.

Based on the foregoing, the Court finds that the Plaintiffs have failed to present sufficient evidence to establish a colorable basis for their claim that they and the putative collection action Plaintiffs were denied overtime pay under a single decision, policy, or plan of Defendant Acosta. Thus, the Court will deny Plaintiffs' Motion for Notice and Conditional Certification.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Notice and Conditional Certification (ECF No. 75) is **DENIED.**

Dated this <u>8th</u> day of August, 2018.

RONNIE L. WHITE
**UNITED STATES DISTRICT JUDGE**